# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHRISTINA LOUISE THORNSBERRY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 4:17-00531-CV-RK<br>)<br>) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA's") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the

findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

In determining that Plaintiff was not disabled, the ALJ undertook the five-step evaluation process established by the SSA. At step one, the ALJ found that Plaintiff was not engaged in any substantial gainful activity since her disability onset date. At step two, the ALJ determined that Plaintiff suffered from the following severe medical impairments: left arm neuropathy, migraine headaches, obesity, and fibromyalgia. Also at step two, ALJ determined that Plaintiff did not have a medically determinable somatoform disorder, that Plaintiff's left ankle impairment was non-severe, and that Plaintiff's Pansinusitis was non-severe. At step three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, did not meet or medically equal any of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Between steps three and four, the ALJ found that despite her limitations, Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work with the following limitations:

> only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but no climbing of ladders, ropes, or scaffolds; no concentrated exposure to temperature extremes, vibration, or work hazards; no use of foot controls; no exposure to pulmonary irritants; limited to simple unskilled work of a routine and repetitive nature; and can frequently, but not constantly, use the dominant left upper extremity for fine fingering and gross handling.

At step four, the ALJ found that Plaintiff was unable to do her past work of office manager. Finally, at step five, the ALJ found that when considering Plaintiff's RFC, age, education, and work experience, Plaintiff could perform jobs that exist in significant numbers in the national economy, including weight tester; order clerk, food and beverage; and document preparer.

On appeal, Plaintiff argues that (1) "[t]he ALJ failed to assess the RFC on a function-by-function basis and erroneously assessed the exertional level first;" (2) the ALJ failed to fairly and fully develop the record; (3) the ALJ did not properly assess the opinion of Plaintiff's treating physician; and (4) the Vocational Expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT").

## I. Function-by-Function Assessment

First, Plaintiff argues the ALJ failed to provide a function-by-function assessment of her limitations and abilities before assessing the exertional level (sedentary) when determining Plaintiff's RFC, in violation of Social Security Ruling ("SSR") 96-8p. However, the fact that the

ALJ omitted a discussion of functional abilities does not mean he did not consider them. *E.g.*, *Beagley v. Berryhill*, No. 5:17-06079-CV-RK, 2018 WL 4565461, at *3 (W.D. Mo. Sept. 24, 2018). "[A]n ALJ who specifically addresses the areas in which he found a limitation and is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter." *Brown v. Astrue*, No. 4:09-CV-274–DJS, 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010); *see Depover v. Barhnart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (holding that the fact that the ALJ made explicit findings only as to functions for which he found a limit suggested he implicitly found no limits as to other functions).

The cases Plaintiff cites are distinguishable. *Hayes v. Astrue*, No. 2:11-CV-04132-NKL, 2012 WL 393406, at *5 (W.D. Mo. Feb. 6, 2012); *Schuler v. Astrue*, No. 07-3360-CV-S-JCE-SSA, 2009 WL 613556, at *5 (W.D. Mo. Mar. 9, 2009); *Brown v. Astrue*, No. 4:09CV274-DJS, 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010); *Proffitt v. Astrue*, No. CIV. 08-5024, 2009 WL 315690, at *3 (W.D. Ark. Feb. 6, 2009). In *Hayes*, the ALJ made no explicit findings about the claimant's functional limits. In *Schuler*, *Brown*, and *Profitt*, the objective medical evidence in the record revealed apparent functional limits that the ALJs did not consider. Here, the ALJ identified various functional limits specific to Plaintiff that are consistent with an ability to do "sedentary work."[1] From the ALJ's explicit findings, the Court can infer that he implicitly found no limits as to other functions. Nothing in the record suggests otherwise. Accordingly, substantial evidence supports the RFC.

## II.     Development of the Record

Second, Plaintiff argues that the ALJ failed to fairly and fully develop the record because he did not order a consultative psychological evaluation concerning a somatoform disorder. "[A]n ALJ has a duty to develop the record only when a crucial issue remains undeveloped." *Couch v. Berryhill*, No. 4:16-01317-CV-RK, 2018 WL 1378527, at *4 (W.D. Mo. Mar. 19, 2018). Here, the ALJ found that Plaintiff's allegation concerning a somatoform disorder was "a gross mischaracterization of the impartial medical expert's interrogatory" and that additional evidence was unnecessary to make a proper decision. These findings are supported by substantial evidence.

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

3

Plaintiff relies on an interrogatory response from the non-examining medical expert, Morton Tavel, M.D. The interrogatory response states: "It is possible that the claimant equals or meets listing 12.07, i.e., somatoform disorder, but a definitive diagnosis depends upon an assessment by a psychological authority." Plaintiff argues this should have prompted the ALJ to order a consultative exam concerning a somatoform disorder. However, no somatoform disorder was discussed at the administrative hearing, and Plaintiff's counsel confirmed at the hearing that there was not "[a]ny psychological diagnosis in the record." (Tr. 39.) Beyond the interrogatory response from Dr. Tavel, the Court sees no reference to a somatoform disorder in the record—which includes several reports from treating physicians. One such opinion from Steven A. Carder, M.D., states that Plaintiff's "[i]nsight and judgment appears both to be intact and appropriate" when addressing her psychiatric health. Accordingly, the Court concludes that substantial evidence supports the ALJ's decision not to order a psychological exam as to a somatoform disorder.

## III. Treating Physician's Opinion

Third, Plaintiff argues that the ALJ did not give proper weight to the opinion of her treating physician, Dr. Carder. An ALJ must "give good reasons" for discounting a treating source opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). Here, Dr. Carder filled out an RFC form stating that Plaintiff can never use her left hand for repetitive motions. The ALJ gave this opinion "less than great weight" and found that Plaintiff can use her left hand frequently for repetitive motions. The ALJ gave the following reasons for discounting Dr. Carder's opinion: (1) the "objective medical evidence of record" did not contain "any clinical or diagnostic abnormality consistent with or supportive of the degree of impairment and limitation contended by Dr. Carder;" (2) Dr. Carder's treatment records did not document a "persistent and sustained musculoskeletal or joint abnormality" with various specific symptoms; and (3) these factors "reasonably suggested that Dr. Carder relied primarily, if not solely, upon the claimant's subjective allegations."

Substantial evidence supports the first and third reasons the ALJ provided. Although the record includes evidence of neuropathy in the left arm, including a diagnosis and treatment records for pain management by another physician, Dr. Carder mentioned Plaintiff's left arm only twice in his treatment notes: once to state that the "Plans for New Diagnosis" included a "Neurology referral for left upper extremity neuropathic pain," and a second time to report that her left hand

4

and fingers were "normal to inspection and palpation." The rest of Dr. Carder's notes showed that Plaintiff's hands were normal. This is consistent with the reports of her previous treating physician (Damon Haybrock, M.D.) and another physician (Christopher Gifford, D.O.), who conducted a consultative exam and concluded that Plaintiff had "intact sensation and motor functioning" in her left arm and could "grasp a pen[,] write a sentence[,] and lift, carry, and handle light objects."

Accordingly, substantial evidence supports the ALJ's findings that Dr. Carder's opinion was inconsistent with the objective medical evidence and was unduly influenced by Plaintiff's subjective allegations. *See McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013) (holding that the ALJ properly discounted a medical opinion when it "appeared to rely largely on [the claimant's] own subjective reports of symptoms and limitations"); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (The Court "will not substitute its opinion for the ALJ's, who is in the better position to gauge credibility and resolve conflicts in the evidence."). Therefore, the Court need not address the ALJ's second reason for discounting Dr. Carder's opinion relating to the lack of certain diagnoses and symptoms in Dr. Carder's prior notes. *See Lucus v. Comm'r, Soc. Sec. Admin.*, No. 6:17-03247-CV-RK, 2018 WL 4600304, at *3 (W.D. Mo. Sept. 25, 2018) (affirming despite harmless error).

## IV. Conflict with the DOT

Finally, Plaintiff argues that the Vocational Expert's testimony that Plaintiff could perform the jobs of order clerk (DOT 209.567-014) and document preparer (DOT 249.587-018) conflicted with the DOT because the RFC limited her to "unskilled work of a routine and repetitive nature," and these two jobs "are not defined in the DOT as 'repetitive' jobs." (Doc. 12 at 16.) However, "[a] claimant's reliance on the *DOT* as a definitive authority on job requirements is misplaced because *DOT* definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quotation marks and citation omitted). "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Id.* (quotation marks and citation omitted). Here, the DOT does not say that a person who can do only "unskilled work of a routine and repetitive nature" cannot do the jobs of order clerk and document preparer. Accordingly, the Vocational Expert's testimony did not conflict with the DOT, and the ALJ properly relied on it.

5

**Conclusion**

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the decision of the ALJ is **AFFIRMED.**

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

DATED:  December 21, 2018